UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MELVIN EUGENE WILLIAMS,<br><br>          Plaintiff,<br><br>    v.<br><br>SOTO, *et al.*,<br><br>          Defendants. | Case No. 1:23-cv-00547-JLT-EPG (PC)<br><br>FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT THIS ACTION BE DISMISSED, WITHOUT FURTHER LEAVE TO AMEND, FOR FAILURE TO STATE A CLAIM<br><br>(ECF No. 24)<br><br>OBJECTIONS, IF ANY, DUE WITHIN THIRTY DAYS |

Plaintiff Melvin Eugene Williams is a state prisoner proceeding *pro se* in this civil rights action filed pursuant to 42 U.S.C. § 1983. (ECF No. 1). Plaintiff filed his complaint on April 7, 2023, and ultimately paid the filing fee on December 14, 2023. The Court screening the complaint on May 8, 2024, finding no cognizable claims and giving Plaintiff leave to amend. (ECF No. 23). Plaintiff filed a first amended complaint on June 13, 2024, (ECF No. 24), which is before the Court for screening. Plaintiff generally alleges that he was put in segregated housing and lost certain privileges in retaliation for threatening to file a grievance and without due process of law.

Upon review, the Court will recommend that Plaintiff's amended complaint be dismissed without further leave to amend for failure to state a claim.

## I. SCREENING REQUIREMENT

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint, or a portion of it, if the prisoner raises claims that are frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2).

A complaint is required to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). The mere possibility of misconduct falls short of meeting this plausibility standard. *Id.* at 679. While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (citation and quotation marks omitted). Additionally, a plaintiff's legal conclusions are not accepted as true. *Iqbal*, 556 U.S. at 678.

Pleadings of *pro se* plaintiffs "must be held to less stringent standards than formal pleadings drafted by lawyers." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (holding that *pro se* complaints should continue to be liberally construed after *Iqbal*).

## II. SUMMARY OF PLAINTIFF'S FIRST AMENDED COMPLAINT

Plaintiff's First Amended Complaint ("FAC") alleges as follows:

Plaintiff was an inmate at Valley State Prison at the time of the events at issue in the FAC.

On or about September, 2019, "ISU" (presumably Investigate Services Unit) Sergeant Soto conducted a hallway search on "D" hallway. Plaintiff stayed in Room 30–4 with bunkmate Burns. After returning back to the pod, Plaintiff realized that ISU officers mixed personal belongings of Plaintiff with those of Burns. Plaintiff stated to Soto, "Hey bitch ass mother fucker I'm going to file a 602."

On December 27, 2019, Sergeant Soto returned to Plaintiff's housing unit and stated "Who's the bitch ass mother fucker now. I told you who I was, now I'm going to show you."

As a result of false allegations and being placed in SHU by defendant Soto, Plaintiff suffered a loss of visits, family visits, and canteen, which would have been afforded to Plaintiff if not for the false allegation of Soto.

On December 27, 2019, Plaintiff was placed in ASU (presumably Administrative Segregation Unit) by Officer J. Lutz, who was in charge of the investigation. J. Lutz placed Plaintiff in ASU and wrote Plaintiff a CDCR 115.

On January 2, 2020, the classification committee took away visits, and gave Plaintiff a SHU term without ever having a procedural due process hearing of any RVR. Plaintiff was placed in ASU for months due to a false allegation from Soto.

On January 2, 2020, Plaintiff was given an MERD (presumably Minimum Eligible Release Date) of June 3, 2020 by C.C.II. Acosta, which was a classification committee action which returned Plaintiff in ASU. C.C.II. A. Acosta gave Plaintiff a 90 day extension back into the SHU term that ended. C.C.II. A. Acosta was the counselor of record and didn't do anything to correct the actions. Instead, she continued with visiting restrictions that her and Warden Fisher placed on Plaintiff on January 2, 2020.

Acosta was C.C.II. of B-yard and Warden R. Fisher Jr. was a part of these classification committee actions. Classification Committee assisted in mitigating the SHU term and gave it to Plaintiff on January 2, 2020 without adjudication of the RVR. Plaintiff appeared before the Committee. The purpose of classification doing that hearing was that defendant Fisher assessed Plaintiff a SHU term without any procedural due process, invalidating jurisdiction of the RVR.

At all times mentioned, Plaintiff was entitled under CA Code of Regulations § 15.3044.(c)(5) to receive family visiting privileges as all other inmates of the same work group/privilege group, but was denied this state entitlement benefit solely because Plaintiff verbally expressed his intent to seek redress of Soto's retaliatory actions.

Defendants all discriminated and retaliated against Plaintiff because they denied Plaintiff a benefit that they have granted to other inmates equally situated as Plaintiff. Defendants all knew there was no legal basis for their actions because Plaintiff was not found guilty of any RVR

3

offense or any other preclusions, yet defendants and Fisher, as supervisor, took no steps to abate actions of retaliation, denial of due process, and equal protection.

Defendants exaggerated their response to prison concerns and did not have any legitimate penological interest when they jointly conspired to deny Plaintiff's visits, commissary, and phone with false information. Defendant Soto threatened Plaintiff and acted upon that threat when he intentionally submitted false information on the CDCR 114-D and CDCR 128-B to cause Plaintiff to be placed in ASU. Defendants' actions were arbitrary and capricious, and no legitimate penological goals can be justified by the use of false information in retaliation.

Plaintiff asserts causes of action for violation his rights to due process, speech, and equal protection.

### III.     ANALYSIS OF PLAINTIFF'S COMPLAINT

#### A.     Section 1983

The Civil Rights Act under which this action was filed provides as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. "[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Graham v. Connor*, 490 U.S. 386, 393–94 (1989) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)); *see also Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 618 (1979); *Hall v. City of Los Angeles*, 697 F.3d 1059, 1068 (9th Cir. 2012); *Crowley v. Nevada*, 678 F.3d 730, 734 (9th Cir. 2012); *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006).

To state a claim under § 1983, a plaintiff must allege that (1) the defendant acted under color of state law, and (2) the defendant deprived him of rights secured by the Constitution or federal law. *Long v. County of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006); *see also Marsh v. County of San Diego*, 680 F.3d 1148, 1158 (9th Cir. 2012) (discussing "under color of state law"). A person deprives another of a constitutional right, "within the meaning of § 1983, 'if he

does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.'" *Preschooler II v. Clark County Sch. Bd. of Trs.*, 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978)). "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms." *Preschooler II*, 479 F.3d at 1183 (quoting *Johnson*, 588 F.2d at 743). This standard of causation "closely resembles the standard 'foreseeability' formulation of proximate cause." *Arnold v. Int'l Bus. Mach. Corp.*, 637 F.2d 1350, 1355 (9th Cir. 1981); *see also Harper v. City of Los Angeles*, 533 F.3d 1010, 1026 (9th Cir. 2008).

A plaintiff must demonstrate that each named defendant personally participated in the deprivation of his rights. *Iqbal*, 556 U.S. at 676–77. In other words, there must be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by the plaintiff. *See Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 691, 695 (1978).

Supervisory personnel are not liable under § 1983 for the actions of their employees under a theory of *respondeat superior* and, therefore, when a named defendant holds a supervisory position, the causal link between the supervisory defendant and the claimed constitutional violation must be specifically alleged. *Iqbal,* 556 U.S. at 676–77; *Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir. 1979); *Mosher v. Saalfeld*, 589 F.2d 438, 441 (9th Cir. 1978). To state a claim for relief under § 1983 based on a theory of supervisory liability, a plaintiff must allege some facts that would support a claim that the supervisory defendants either: were personally involved in the alleged deprivation of constitutional rights, *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989); "knew of the violations and failed to act to prevent them," *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989); or promulgated or "implement[ed] a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation," *Hansen*, 885 F.2d at 646 (citations and internal quotation marks omitted).

For instance, a supervisor may be liable for his or her "own culpable action or inaction in the training, supervision, or control of his [or her] subordinates," "his [or her] acquiescence in the

constitutional deprivations of which the complaint is made," or "conduct that showed a reckless or callous indifference to the rights of others." *Larez v. City of Los Angeles*, 946 F.2d 630, 646 (9th Cir. 1991) (citations, internal quotation marks, and brackets omitted).

### B. Due Process

The Due Process Clause of the Fourteenth Amendment prohibits states from depriving individuals of "life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1; *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). To state a cause of action for deprivation of procedural due process, a plaintiff must first establish the existence of a liberty interest for which the protection is sought. Liberty interests may arise from the Due Process Clause itself or from state law. *Hewitt v. Helms*, 459 U.S. 460, 466–68 (1983). With respect to liberty interests arising from state law, the existence of a liberty interest created by prison regulations is determined by focusing on the nature of the deprivation. *Sandin v. Conner*, 515 U.S. 472, 481–84 (1995). Liberty interests created by prison regulations are limited to freedom from restraint which "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id*. at 484.

Additionally, "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). The minimum procedural protections prison officials must provide an inmate facing disciplinary charges are: (1) a written notice of the charges at least 24 hours before the disciplinary hearing; (2) a written statement by the factfinders detailing the evidence relied upon and the reasons for the disciplinary action; (3) the right for the inmate to call witnesses and present documentary evidence, unless doing so would be unduly hazardous to institutional safety or correctional goals; and (4) assistance where the issues presented are complex or the inmate is illiterate. *See Wolff*, 418 U.S. at 564–70. "Some evidence" must also support the hearing officer's decision, and the evidence must have some indicia of reliability. *Superintendent v. Hill*, 472 U.S. 445, 455 (1985); *accord Cato v. Rushen*, 824 F.2d 703, 705 (9th Cir. 1987). The "some evidence" standard is minimally stringent, and the relevant inquiry is whether "there is any evidence in the record that could support the conclusion reached." *Hill*, 472 U.S. at 455–56.

These protections "adhere only when the disciplinary action implicates a protected liberty interest in some 'unexpected matter' or imposes an 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Serrano v. Francis*, 345 F.3d 1071, 1078 (9th Cir. 2003) (quoting *Sandin*, 515 U.S. at 484).

Moreover, regarding Administrative Segregation, even assuming that Plaintiff has a liberty interest in being in general population rather than administrative segregation, federal due process requires only the following: (1) upon initial placement in segregation, notice of the factual basis for the segregation and an opportunity to be heard; (2) some evidence to support the decision; and (3) periodic review of the inmate's confinement status. *See Hewitt*, 459 U.S. at 477 and n.9; *see also Wilkinson v. Austin*, 545 U.S. 209, 225–26 (2005); *Superintendent*, 472 U.S. at 455; *Sandin*, 515 U.S. at 476 (1995) ("An inmate must merely receive some notice of the charges against him and an opportunity to present his views to the prison official charged with deciding whether to transfer him to administrative segregation.").

Plaintiff alleges that his rights to due process were violated because he received a SHU term without a procedural due process hearing of any RVR. He also alleges that he was placed in ASU for months. Plaintiff also alleges he received visiting and canteen restrictions for an unspecified amount of time.

The Ninth Circuit has provided the following guidance in determining when a prisoner is entitled to a hearing with *Wolff*'s procedures as a result of a disciplinary violation:

> Under the Fourteenth Amendment's Due Process Clause, a prisoner is entitled to certain due process protections when he is charged with a disciplinary violation. *Wolff v. McDonnell,* 418 U.S. 539, 564–571, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). Such protections include the rights to call witnesses, to present documentary evidence and to have a written statement by the factfinder as to the evidence relied upon and the reasons for the disciplinary action taken. *Id.*
>
> These healthy procedural protections, however, adhere only when the disciplinary action implicates a protected liberty interest in some "unexpected matter" or imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Connor,* 515 U.S. 472, 484, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995); *see also Ramirez v. Galaza,* 334 F.3d 850, 860 (2003) ("If the hardship is sufficiently significant, then the court must determine whether the procedures used to

deprive that liberty satisfied Due Process.") (citations omitted). The Supreme Court has identified few protected liberty interests. *See, e.g., Vitek v. Jones,* 445 U.S. 480, 493, 100 S.Ct. 1254, 63 L.Ed.2d 552 (1980) (identifying the freedom from transfer to a mental hospital as a protected liberty interest); *Washington v. Harper,* 494 U.S. 210, 221 222, 110 S.Ct. 1028, 108 L.Ed.2d 178 (1990) (identifying the freedom from the involuntary administration of psychotropic drugs as a protected liberty interest).

Rather than invoking a single standard for determining whether a prison hardship is atypical and significant, we rely on a "condition or combination of conditions or factors [that] requires case by case, fact by fact consideration." *Keenan v. Hall,* 83 F.3d 1083, 1089 (9th Cir. 1996). Specifically, we look to three guideposts by which to frame the inquiry: (1) whether the challenged condition "mirrored those conditions imposed upon inmates in administrative segregation and protective custody," and thus comported with the prison's discretionary authority; (2) the duration of the condition, and the degree of restraint imposed; and (3) whether the state's action will invariably affect the duration of the prisoner's sentence. *Sandin,* 515 U.S. at 486–487, 115 S.Ct. 2293; *Keenan,* 83 F.3d at 1089.

Typically, administrative segregation in and of itself does not implicate a protected liberty interest. *See, e.g., Sandin,* 515 U.S. at 486, 115 S.Ct. 2293 ("[D]isciplinary segregation, with insignificant exceptions, mirror[s] those conditions imposed upon inmates in administrative segregation and protective custody."); *Resnick v. Hayes,* 213 F.3d 443, 449 (9th Cir. 2000) (holding that the pre-sentencing prisoner had no liberty interest in being free from administrative segregation); *accord Wagner v. Hanks,* 128 F.3d 1173, 1174 (7th Cir. 1997) ("But it would be difficult (we do not say impossible) to make disciplinary segregation sufficiently more restrictive than the conditions of the general population . . . to count as an atypical and significant deprivation of liberty[.]"); *Freitas v. Ault,* 109 F.3d 1335, 1337 (8th Cir. 1997) ("We believe that as a matter of law these conditions of [standard administrative segregation] do not constitute an 'atypical and significant' hardship, . . . when compared to the burdens of ordinary prison life.") (internal citation omitted).

*Serrano v. Francis*, 345 F.3d 1071, 1077–1078 (9th Cir. 2003). *See also, e.g., Sandin,* 515 U.S. at 472 (30 days disciplinary segregation is not atypical and significant).

Additionally, Plaintiff does not have a constitutional liberty interest in the loss of visitation and canteen. *See Smart v. Ortiz*, 2018 WL 3752326, at *9 (S.D. Cal., Aug. 8, 2018, No. 17CV1454 AJB (BGS)), *report and recommendation adopted* 2019 WL 1254570 (S.D. Cal., Mar.

19, 2019, No. 17-CV-1454-AJB-BGS) ("Defendants also specifically argue Plaintiff has no liberty interest in loss of visitation and canteen. . . . [T]he Court concludes that these restriction do not give rise to a protected liberty interest because they are not atypical for one serving a prison sentence."); *Gerber v. Hickman,* 291 F.3d 617, 621(9th Cir. 2002) ("it is well-settled that prisoners have no constitutional right while incarcerated to contact visits or conjugal visits"); *Allen v. Kernan,* 2017 WL 4518489, at *5 (S.D. Cal., Oct. 10, 2017, No. 316CV01923CABJMA) ("the loss of privileges like yard time, phone access, and visitation are 'within the range of confinement to be normally expected for one serving [the underlying sentence]'), and therefore are not atypical.'"); *Higdon v. Ryan,* 2014 WL 1827156, at *5 (D. Ariz., May 8, 2014, No. CV 13–0475-PHX-DGC) ("Plaintiff alleges that he suffered 30 days' loss of visits and privileges, but none of the sanctions imposed constitute atypical or significant hardships that would trigger a liberty interest. Plaintiff also alleges that he lost all contact visitation privileges, but the Due Process Clause does not guarantee a right of unfettered visitation.").

With this in mind, Plaintiff's allegation that he was put in segregation and lost some amount of visiting privileges and canteen without an RVR and full disciplinary hearing does not state a claim for violation of his fourteenth amendment right to due process. Being put in segregated housing by itself does not indicate that Plaintiff was subjected to an atypical and significant hardship that would entitle him to a full disciplinary hearing. Nor is the loss of visiting privileges and canteen for some amount of time an atypical and significant hardship entitling Plaintiff to a such a disciplinary hearing.

Moreover, even though extended placement in segregated housing may entitled Plaintiff to certain procedures, it does not appear that Plaintiff was deprived of those procedures. As an initial matter, it is not clear from the complaint how much of this segregation was in ASU (Administrative Segregation Unit) versus SHU (Segregated Housing Unit). But in any event, Plaintiff does not allege that he lacked the procedures described above for placement in segregated housing including: (1) upon initial placement in segregation, notice of the factual basis for the segregation and an opportunity to be heard; (2) some evidence to support the decision; and (3) periodic review of the inmate's confinement status. *See Hewitt*, 459 U.S. at 477 and n.9; *see also Wilkinson v. Austin*, 545 U.S. 209, 225–26 (2005). This is noteworthy as the Court's initial

screening order provided legal standards for placement in segregated housing and gave Plaintiff an opportunity to amend his complaint, along with the following direction:

> Plaintiff also does not describe what process, if any, he received. Regarding his time in Administrative Segregation, it is not clear if Plaintiff received notice of the charges against him, an opportunity to present his views to the prison official charged with deciding whether to transfer him to administrative segregation, or a periodic review to the extent he was segregated for a length of time. Regarding Plaintiff's time in Segregated Housing, it is not clear if this was done as a disciplinary or punitive measure, or whether Plaintiff received any process before being placed in that housing.

(ECF No. 23 at 9). Despite this, Plaintiff's amended complaint fails to allege that he was placed in segregated housing without these procedures. Additionally, Plaintiff's complaint describes several classification actions that appears to show repeated reviews of his confinement status.

Thus, Plaintiff's complaint fails to state a due process claim against any defendant.

### C.     First Amendment Retaliation

Allegations of retaliation against a prisoner's First Amendment rights may support a section 1983 claim. *Rizzo v. Dawson*, 778 F.2d 527, 532 (9th Cir. 1985); *see also Valandingham v. Bojorquez*, 866 F.2d 1135 (9th Cir. 1989); *Pratt v. Rowland*, 65 F.3d 802, 807 (9th Cir. 1995). There are five basic elements to a First Amendment retaliation claim: "(1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567–68 (9th Cir. 2005) (footnote omitted); *accord Watson v. Carter*, 668 F.3d 1108, 1114–15 (9th Cir. 2012); *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009).

A plaintiff asserting a retaliation claim under § 1983 also "must show a causal connection between a defendant's retaliatory animus and [the plaintiff's] subsequent injury." *Hartman v. Moore*, 547 U.S. 250, 259 (2006) (*Bivens* action). Retaliatory motivation is not established simply by showing an adverse action by the defendant *after* protected speech. Instead, the plaintiff must show a nexus between the two. *Huskey v. City of San Jose*, 204 F.3d 893, 899 (9th Cir. 2000)

(stating that a retaliation claim cannot rest on "the logical fallacy of *post hoc, ergo propter hoc*, literally, 'after this, therefore because of this'").

Here, Plaintiff alleges retaliation because the ISU officer who placed Plaintiff in ASU was the same sergeant who was in charge of a cell search three months earlier, during which Plaintiff alleges he told Sergeant Soto "Hey bitch ass motherfucker I'm going to file a 602." Plaintiff alleges that when Sergeant Soto later made an accusation against him (Plaintiff does not describe the content of the accusation), Soto said "Who's the bitch ass mother fucker now?"

The Court finds that these allegations fail to state a claim for retaliation in violation of the First Amendment. The only fact tying Sergeant Soto's allegation with Plaintiff's comment month's earlier is Soto's statement "Who's the bitch ass mother fucker now?" Even assuming that this comment sufficiently links the charge by Soto to the earlier interaction, that comment does not refer to Plaintiff's comment about filing the 602. Rather, it refers to Plaintiff's earlier curse words and name-calling, which are not protected conduct. Put another way, name-calling and cursing at correctional officers is not protected by the First Amendment, so retaliation against such comments is also not protected by the First Amendment.

Plaintiff's complaint thus fails to state a cause of action for retaliation in violation of the First Amendment.

### D.  Equal Protection

The Equal Protection Clause of the Fourteenth Amendment requires that persons who are similarly situated be treated alike. *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (quoting *Plyler v. Doe*, 457 U.S. 202, 216 (1982)). To state an equal protection claim, a plaintiff must allege facts plausibly showing that "the defendants acted with an intent or purpose to discriminate against [him] based upon membership in a protected class." *Lee v. City of Los Angeles*, 250 F.3d 668, 686 (9th Cir. 2001) (citation omitted). "Intentional discrimination means that a defendant acted at least in part because of a plaintiff's protected status." *Serrano v. Francis*, 345 F.3d 1071, 1082 (9th Cir. 2003) (internal quotation marks and citation omitted). Equal protection claims alleging disparate treatment or classifications are subject to a heightened standard of scrutiny when they involve a "suspect" or "quasi-suspect" class, such as race or

national origin, or when they involve a burden on the exercise of fundamental personal rights protected by the Constitution. *See, e.g.*, *City of Cleburne*, 473 U.S. at 440.

Plaintiff claims that his right to equal protection was violated because he lost family visiting privileges that were given to others in the same work group/privilege group. However, Plaintiff does not state that he is a member of any protected class, or that anyone discriminated against him based on that class or some characteristic about him. Moreover, Plaintiff's allegation that he was treated unequally is based on his contention that he lost visitation and canteen privileges "despite the fact Plaintiff fit all the criterias to receive said privileges," and not that other similarly situated prisoners with similar charges against them still received such privileges. In sum, Plaintiff has not alleged facts plausibly showing that the defendants acted with an intent or purpose to discriminate against him based upon membership in a protected class.

Plaintiff thus fails to state a claim for violation of the Fourteenth Amendment's equal protection clause.

## IV. CONCLUSION AND ORDER

The Court recommends that this action be dismissed, without granting Plaintiff further leave to amend. In the Court's prior screening order, the Court identified the deficiencies in Plaintiff's complaint, provided Plaintiff with relevant legal standards, and provided Plaintiff with an opportunity to amend his complaint. Plaintiff filed his First Amended Complaint with the benefit of the Court's screening order, but failed to cure the deficiencies identified by the Court. Thus, it appears that further leave to amend would be futile.

Accordingly, **IT IS RECOMMENDED** as follows:

1. This action be dismissed with prejudice for failure to state any cognizable claims.
2. The Clerk of Court be directed to close this case.

These findings and recommendations are submitted to the United States district judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1). Within thirty (30) days after being served with these findings and recommendations, Plaintiff may file written objections with the Court. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."

Plaintiff is advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838–39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **July 16, 2024**     /s/ Erica P. Grosjean
UNITED STATES MAGISTRATE JUDGE